CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

01/04/2019

JULIA C. DUDLEY, CLERK
BY: /s/ H. Wheeler
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| JERIKA C., <br>     Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>     Defendant. | Civil Action No. 3:17-cv-00070 <br><br> <u>REPORT & RECOMMENDATION</u> <br><br> By:   Joel C. Hoppe <br>        United States Magistrate Judge |

      Plaintiff Jerika C., appearing pro se, asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 11. Having considered the administrative record, the parties' filings, and the applicable law, I find that the Appeals Council erred by failing to consider new and material evidence that Jerika C. submitted to the agency under 20 C.F.R. § 416.1470 (2017). Accordingly, I respectfully recommend that the case be remanded under the sixth sentence of 42 U.S.C. § 405(g), so the Commissioner may consider this evidence in the first instance.

## I. Standard of Review

      The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether

substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a).[1] Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets

---

[1] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

2

or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Jerika C. filed the underlying SSI application on December 16, 2013, alleging disability from Wolff-Parkinson-White Syndrome (a cardiac impairment), schizophrenia, obsessive compulsive disorder, anxiety, depression, and attention deficit hyperactivity disorder. *See* Administrative Record ("R.") 204, 259–60, 374–78. Disability Determination Services ("DDS"), the Virginia state agency, denied her claim initially in July 2014 and upon reconsideration that November. *See* R. 259–74, 275–91. On June 24, 2016, Jerika C. appeared without counsel and testified at an administrative hearing before ALJ Evelyn Maiben in Dallas, Texas.[2] *See* R. 220–46. A vocational expert ("VE") also testified at this hearing. R. 243–45.

ALJ Maiben issued an unfavorable decision on October 26, 2016. R. 204–13. She found that Jerika C.'s "Wolff-Parkinson-White Syndrome; antero-septal pathway; major depressive disorder; attention-deficit/hyperactivity disorder (ADHD); panic disorder with agoraphobia; psychotic disorder, NOS; and anxiety disorder" were all "severe" medically determinable impairments, but that they did not meet or medically equal the relevant Listings. R. 206–07 (citing 20 C.F.R. pt. 404, supbt. P, app. 1 §§ 4.00, 12.02, 12.04). ALJ Maiben then evaluated

---

[2] Venue is proper in the United States District Court for the Western District of Virginia because Jerika C. resided within this judicial district when she brought the civil action. Compl. 1, ECF No. 2; *see* 42 U.S.C. § 405(g).

Jerika C.'s residual functional capacity ("RFC")[3] based on all of her medical impairments, R. 208–11, and found she could perform "light work" that involved occasional postural activities; "avoid[ed] concentrated exposure" to workplace hazards, respiratory irritants, and extreme temperatures; and never required climbing ropes, ladders, or scaffolds, R. 208. She was also limited to work that involved "one or two-step instructions and making simple decisions" and only "occasional contact with the general public, co-workers, and supervisors." R. 208. Jerika C. did not have any past relevant work, R. 212, and therefore could not be found "not disabled" at step four, *see* 20 C.F.R. § 416.920(f). Finally, based on the RFC finding and the VE's hearing testimony, ALJ Maiben concluded at step five that Jerika C. was not disabled after December 16, 2013, because she still could perform certain widely available light,[4] unskilled occupations, such as merchandise marker, photocopy machine operator, and electrical assembler. R. 212–13; *see* R. 243–45.

Jerika C. then asked the Appeals Council to review ALJ Maiben's decision, noting that she could "not work because being under minimal stress causes all [of her] mental conditions to increase way beyond any control." R. 368 (Ex. 17B) (capitalization altered); *see also* R. 547–57 (Ex. 35E). She also submitted nearly two hundred pages of additional medical records related to

---

[3] A claimant's RFC represents her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite her medical impairments. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted); *see* 20 C.F.R. § 416.945. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined functionally limiting effects of impairments that are supported by the medical evidence or the claimant's credible reports of pain or other symptoms, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015).

[4] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. § 416.967(b). "'Unskilled work' is a term of art, defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Fisher v. Barnhart*, 181 F. App'x 359, 364 n.3 (4th Cir. 2006) (quoting 20 C.F.R. § 404.1568(a)); *accord* 20 C.F.R. § 416.968(a). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (Jan 1, 1985).

her mental impairments and alleged functional limitations, R. 7–191, but the Appeals Council refused to consider this evidence in determining whether to grant or deny her request for review, R. 2. The Appeals Council denied Jerika C.'s request, R. 1–5, thereby making ALJ Maiben's written decision "the final decision of the Commissioner" denying her SSI claim, R. 1. This appeal followed.

### III. Discussion

Jerika C. seeks judicial review of both the Commissioner's final decision denying benefits and the Appeals Council's "denial of request for review." Compl. 1. The Commissioner filed a brief asserting her positions that ALJ Maiben's findings and conclusions were supported by substantial evidence in the hearing-level record, *see* Def.'s Br. 16–17, ECF No. 13, and that the Appeals Council properly declined to consider all of Jerika C.'s later-submitted psychiatric treatment records, *see id.* at 10–16 (discussing 20 C.F.R. § 416.1470 (2017)). The Court finds that Jerika C.'s second ground for appeal, which the Court (like the Commissioner) liberally construes as challenging the Appeals Council's refusal to consider her additional medical evidence in accordance with 20 C.F.R. § 416.1470 and well-established Fourth Circuit precedent interpreting this regulation's predecessor, is persuasive and warrants remand for further proceedings under the sixth sentence of 42 U.S.C. § 405(g).[5] *See, e.g.*, *Vickie W. v. Berrhyill*, No. 7:17cv324, 2018 WL 4604038, at *4–5 (W.D. Va. Sept. 25, 2018).

---

[5] The Court takes this approach primarily because ALJ Maiben's analysis of Jerika C.'s mental RFC was so conclusory, and at points materially incomplete when compared to probative evidence in the original record, that I am "left to guess about how the ALJ arrived at [her] conclusions" on Jerika C.'s capacities to perform relevant functions on a sustained basis in a competitive workplace. *Mascio*, 780 F.3d at 637. These errors are "especially troubling because the record contains conflicting evidence as to [Jerika C.'s] residual functional capacity—evidence that the ALJ did not address." *Id.* As just one example, ALJ Maiben found that Jerika C.'s daily activities were "not limited to the extent one would expect given [her] complaints of disabling" psychiatric symptoms and limitations in part because Jerika C. cared for herself independently and "visit[ed] her baby in the hospital every other day" after he was born in February 2016. *See* R. 210–11. The cited activities show minimal functional capacity, and ALJ Maiben did not mention

5

\* \* \*

When a claimant appeals an ALJ's ruling, the Appeals Council first makes a procedural decision whether to grant or deny the request for review. *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005). The current version of the governing regulation states, in relevant part, that the "Appeals Council will review a case" if

> subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the [ALJ's] hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 416.1470(a)(5) (2017).[6] The Fourth Circuit has long held that this paragraph's predecessor, 20 C.F.R. §§ 404.970(b), 416.1470(b), set "forth a mandatory rule that the Appeals Council must consider any new and material evidence relating to the period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *see also Meyer*, 662 F.3d at 704–05 (citing 20 C.F.R. § 404.970(b) (2011)). The Appeals Council would "then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary

---

medical records showing that Jerika C. had "agreed to sign over rights of the baby to [her] mother until [she] is stable enough to take care of the baby." R. 814; *see also* R. 1290 ("Mom and sister report a history of suicidal and homicidal attempts by [Jerika C.] in the past, and express genuine concern for the [baby's] safety."). Nor did ALJ Maiben discuss labor-and-delivery records showing that Jerika C. remained hospitalized for psychiatric follow up until Child Protective Services could connect her with outpatient treatment. R. 1289. The ALJ's failure to mention "an entire line" of medical evidence that directly contradicted her rationale for discounting Jerika C.'s subjective statements leaves the Court "unable to tell whether the ALJ's decision rests upon substantial evidence." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (per curiam). Given the compelling nature of the evidence that Jerika C. submitted to the Appeals Council, however, the Court finds it more appropriate to withhold judgment and "remand this case to the Commissioner for further administrative development." *Wilson v. Colvin*, No. 7:13cv113, 2014 WL 2040108, at \*3 (W.D. Va. May 16, 2014).

[6] Paragraph (b) in turn explains that "the Appeals Council will only consider additional evidence under paragraph (a)(5) if [the claimant] show[s] good cause for not informing [the agency] about or submitting the evidence" within a certain time before the ALJ hearing. 20 C.F.R. § 416.1470(b); *see* R. 194. This new "good cause" requirement is not an issue in Jerika C.'s case because her request for review was pending at the Appeals Council before the current regulation went into effect on May 1, 2017. R. 195; *see Vickie W.*, 2018 WL 4604038, at \*3 n.11.

to the weight of the evidence currently of record"—including any new and material evidence it was required to "consider" under 20 C.F.R. § 416.1470(b). *See Meyer*, 662 F.3d at 704–05.

The current version retains the language that the Appeals Council need "only consider additional evidence" submitted to it if the additional evidence "is new, material, and relates to the period on or before the date of the [ALJ] hearing decision," *see* 20 C.F.R. § 416.1470(a)(5), (b)–(c), but clarifies that "the Appeals Council will grant review of a case based on the receipt" of such evidence only "if there is a reasonable probability that the additional evidence would change the outcome of the decision," *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-1, 90,991 (Dec. 16, 2016) (to be codified at 20 C.F.R. §§ 404, 416). *See* Def.'s Br. 11–12 & nn. 6–7. Accordingly, the Court agrees with the Commissioner that *Wilkins* still provides the correct legal framework for determining whether, under the current version of 20 C.F.R. § 416.1470(a)(5), Jerika C.'s additional medical evidence is new, material, and related to the period before ALJ Maiben issued her decision on October 26, 2016. Def.'s Br. 11–12; *see also Vickie W.*, 2018 WL 4604038, at *3–5 (applying *Wilkins*). If any of the evidence meets all three criteria, then "the Appeals Council erred in failing to consider" it, *Vickie W.*, 2018 WL 4604038, at *4, and remand may be warranted, *Wilson*, 2014 WL 2040108, at *3–5 (citing *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985)). *See, e.g.*, *Smith v. Astrue*, No. 5:08cv44, 2009 WL 122800, at *2–5 (W.D. Va. Jan. 16, 2009) (concluding that the "Appeals Council's treatment of . . . [certain] new evidence [was] deficient as a matter of law" and remanding for the Commissioner to consider "all of the medical evidence" that had been developed in the case).

"Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis*, 392 F.

7

Supp. 2d at 750 (quoting *Wilkins*, 953 F.2d at 96); *see also* 42 U.S.C. § 405(g) (sentence six) ("The court may . . . at anytime order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material" to the outcome of the claim). Evidence "relates to" the relevant period if it provides additional insight into impairments, symptoms, or functional limitations that the claimant suffered while the ALJ was reviewing her case, *Wilson*, 2014 WL 2040108, at *4, even if the additional evidence was created after the ALJ issued her decision, *Hull v. Astrue*, No. 5:10cv135, 2012 WL 896343, at *5 (W.D. Va. Mar. 15, 2012).

* * *

Jerika C. alleges that she was disabled during the relevant time because a combination of severe psychiatric disorders significantly reduced her capacities to pay attention for extended periods, understand and remember information, complete basic tasks, handle routine stress, and interact with other people on a regular and continuing basis. *See generally* R. 229–30, 235–40, 418–22, 427–36, 479–84, 547, 544–54. Medical notes in the original record show that Jerika C. was diagnosed with and received treatment for multiple psychiatric disorders, including schizoaffective disorder with paranoid delusions, psychosis with auditory/visual hallucinations, recurrent major depressive disorder with suicidal ideation and plan, obsessive compulsive disorder, and generalized anxiety disorder with social phobia. *See, e.g.*, R. 623, 627, 628, 629, 686, 706–07, 801–02. She received "crisis stabilization" services at least twice during the relevant time. *See* R. 563, 696. Healthcare professionals also expressed concern that Jerika C. should not be left home alone, *see* R. 613–14, 654, 704, could not manage money appropriately, R. 649, 659, exhibited "limited ability for adequate judgment and insight," R. 648; *see also* R. 574, required family supervision to take her psychotropic medications as prescribed and to keep

scheduled counseling appointments, R. 630, 760–60, 806, and could not care for her newborn baby, *see, e.g.*, R. 814, 1289–90.

ALJ Maiben summarized some of this evidence in evaluating Jerika C.'s mental impairments and functional limitations throughout her written decision. R. 206–11. As part of her RFC assessment, she found that Jerika C.'s "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that her statements describing their debilitating intensity, persistence, or functional effects were "not entirely consistent for the reasons in [the ALJ's] decision." R. 211. In particular, ALJ Maiben noted that Jerika C. had "not required inpatient psychiatric hospitalization during the pertinent period, except in September 2011, for suicidal ideation"; that available mental health records "reflect[ed] a significant gap in [her] history of treatment" after this hospitalization "until [April] 2016 when she resumed treatment" at an outpatient counseling center in Texas[7]; that unidentified progress notes indicated "prescribed medications were effective with improved mood stability"; and that the "longitudinal record [did] not establish a pattern of continuing severity while psychotropic medications [were] taken as prescribed." *Id.* Ultimately, ALJ Maiben concluded that Jerika C. was not disabled because she still could perform certain "unskilled" occupations that involved "one- or two-step instructions and making simple decisions" and "occasional contact with the general public, co-workers, and supervisors." R. 208; *see also* R. 212–13, 244–45.

As noted, Jerika C. submitted to the Appeals Council dozens of additional medical records related to her mental impairments and functional limitations along with her request that the Appeals Council review ALJ Maiben's decision. *See generally* R. 2–191, 194–97. The

---

[7] This finding contradicts ALJ Maiben's accurate summary of the medical record showing Jerika C. was prescribed psychotropic medications and attended outpatient counseling between June 2012 and June 2014. *See* R. 209–10. ALJ Maiben did not mention any of Jerika C.'s mental-health treatment records dated July to October 2014.

9

Appeals Council denied Jerika C.'s request for review in a written notice dated August 21, 2017, which also explained how it had treated the additional medical records she submitted. *See* R. 1–5. First, the Appeals Council considered and exhibited to the administrative record the reasons Jerika C. disagreed with ALJ Maiben's decision—i.e., that she could "not work because being under minimal stress causes all [of her] mental conditions to increase way beyond any control"—but it found that these reasons did "not provide a basis for changing" the ALJ's decision. R. 1; *see* R. 5 (citing R. 368, 547–54).

Second, the notice indicated that the Appeals Council accepted, but "did not consider and exhibit," most of Jerika C.'s additional medical records because the Appeals Council concluded "this evidence [did] not show a reasonable probability that it would change the outcome of the [ALJ's] decision." R. 2; *see* 20 C.F.R. § 416.1470(a)(5), (c). Some of these records are copies of treatment notes that also appear in the original record and therefore clearly do not qualify as "new" evidence the Appeals Council was required to consider under 20 C.F.R. § 416.1470(a)(5). *E.g.*, *compare* R. 66–77, *with* R. 619–30. Many of the records, however, contain non-cumulative information about Jerika C.'s mental illness and psychiatric treatment both before and shortly after ALJ Maiben issued her decision. *See, e.g.*, R. 37–61 (counseling records dated September 21, 2016, through November 22, 2016, showing Jerika C. sought emergency crisis stabilization services for suicidal ideation and was considered for placement in a group home); R. 78–80 (outpatient counseling notes dated February 13, March 5, and April 29, 2013); R. 88–99 (records showing changes to psychotropic medication, including a new prescription for Lithium, and a second psychiatric hospitalization in September 2016); R. 109–18 (detailed psychiatric evaluation and psychological testing dated December 27, 2011). The notice did not indicate whether the Appeals Council considered any of these medical records to be new and material, 20

C.F.R. § 416.1470(a)(5), and, as was its prerogative, the Appeals Council did not "explain its rationale for denying review," *see Meyer*, 662 F.3d at 705.

Finally, the notice indicated that the Appeals Council rejected additional medical records from Rappahannock-Rapidan Community Services "dated November 1, 2016 to December 15, 2016," because it concluded this "additional evidence [did] not relate to the period at issue" in ALJ Maiben's decision. R. 2; *see* 20 C.F.R. § 416.1470(c). These records include progress notes from outpatient counseling sessions that were part of a comprehensive treatment plan designed to help Jerika C. practice independent living skills and feel less "overwhelmed by symptoms including auditory and visual hallucinations, paranoid thoughts, and anxiety" that were not controlled by prescription medications. R. 7, 14. This one-year treatment plan was implemented on October 28, 2016. *See* R. 7–36.

\* \* \*

The Appeals Council erred in failing to consider Jerika C.'s new treatment records. *See Vickie W.*, 2018 WL 4604038, at \*4–5. "Without question, the new evidence relates to" the myriad psychiatric disorders, symptoms, and alleged functional limitations that ALJ Maiben addressed in her decision. *Wilson*, 2014 WL 2040108, at \*4. "Indeed, as forecast in some of the reports already of record," *id.*; *see, e.g.*, R. 1289–90, the new records show Jerika C. received increasingly aggressive psychiatric treatment, including a second week-long hospital admission, a new prescription for Lithium, and commencement of an independent-living treatment plan, in the months after her son was born in February 2016, *see* R. 88–99, 7–36. Thus, contrary to the Commissioner's position, *see* Def.'s Br. 16, "it is no answer to suggest that the new [records are] descriptive of some new medical condition which developed" or deteriorated only after ALJ Maiben denied Jerika C.'s claim later that same year, *Wilson*, 2014 WL 2040108, at \*4. The

11

other new treatment records are material because they contain a fair amount of objective medical and other evidence supportive of Jerika C.'s claim that her mental illness caused significantly abnormal symptoms (paranoid delusions, auditory hallucinations) that were so severe, pervasive, or beyond her control that she could not regularly perform unskilled work. *See* R. 110–12, 126–43, 161–63. This evidence could reasonably change the outcome of Jerika C.'s claim, especially given the special administrative standards an ALJ must follow when evaluating claims based on mental illness. *See, e.g.*, *Testamark v. Berryhill*, 736 F. App'x 395, 399 (4th Cir. 2018); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (discussing 20 C.F.R. § 404.1520a); SSR 85-15, 1985 WL 56857, at *5–6 (Jan. 1, 1985) (instructing ALJs how to evaluate "stress and mental illness" in determining the claimant's ability to adapt to other work). Accordingly, the Appeals Council's refusal to consider Jerika C.'s additional medical records under 20 C.F.R § 416.1470 was "deficient as a matter of law." *Smith*, 2009 WL 122800, at *2; *see also Vickie W.*, 2018 WL 4604038, at *4.

The Court also concludes that remand under the sixth sentence of 42 U.S.C. § 405(g) is warranted in this case. Sentence six provides a mechanism for the district court to remand a case to the agency "without making any substantive ruling as to the correctness of the [Commissioner's] decision," *Melkonyan*, 501 U.S. at 100, "when [it] learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding," *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).[8] This reinforces the "bedrock principle" that it "is the duty of the ALJ, not a reviewing

---

[8] Fourth Circuit precedent requires the claimant to present the court with "at least a general showing of the nature of the new [and material] evidence" and to show "good cause for [her] failure to submit the evidence when the claim was before the [Commissioner]." *Borders*, 777 F.2d at 955 (quotation marks omitted); *accord Finney v. Colvin*, 637 F. App'x 711, 715 (4th Cir. 2016) (same). Jerika C. submitted her additional evidence to the Appeals Council, which refused to consider any of it, R. 2, and the Commissioner included all of the evidence in the certified copy of the administrative record filed with this

court, to find facts and resolve evidentiary conflicts in Social Security proceedings" by authorizing remand when the new evidence could reasonably change the Commissioner's decision to deny benefits. *Finney*, 637 F. App'x at 720 (King, J., dissenting) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)). Here, no fact finder has considered whether Jerika C.'s complex psychiatric symptoms, as documented in the new treatment records, "were present to such a degree as to prevent performance" of the type of work contemplated by ALJ Maiben's mental RFC and the VE's hearing testimony. *Harmon*, 2015 WL 5708934, at *6. At the very least, the new evidence showing Jerika C. was admitted to a psychiatric hospital more than once during the relevant time *both* contradicts "the ALJ's findings and underlying reasoning" that Jerika C.'s testimony describing persistent, severe symptoms and limitations were not credible, *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012), *and* fills a specific "evidentiary gap [that] played a role" in ALJ Maiben's denial of benefits, *Meyer*, 662 F.3d at 707. *See* R. 211. The Commissioner should have another opportunity to properly consider how the new material evidence factors into her final decision.

## IV. Conclusion

For the foregoing reasons, I find that remand for the Commissioner to consider new and material evidence is necessary to resolve Jerika C.'s SSI claim. Accordingly, I respectfully recommend that the presiding District Judge **DENY** the Commissioner's Motions for Summary Judgment, ECF Nos. 12, 14, **REMAND** the case for further proceedings under the sixth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket. The parties are advised that, should the presiding District Judge adopt the undersigned's recommendation, the

---

Court, *see* Certification & Ct. Tr. Index, ECF No. 8-1. Thus, there are no questions or concerns about the nature of the evidence or "any failure to submit the evidence while the claim was before the Commissioner." *Wilson*, 2014 WL 2040108, at *4.

Court will retain jurisdiction over this civil action pending the Commissioner's determination on remand and further action by either party. *See Wilson*, 2014 WL 2040108, at *5.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTER: January 3, 2019

Joel C. Hoppe
United States Magistrate Judge